No. 19-0802 – *WV DHHR v. C.P.*

**FILED**
**April 23, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, dissenting, joined by Chief Justice Jenkins:

Like the majority, I believe it is important not only to litigants and the bar, but to the citizens of West Virginia as a whole, that this Court ensure that individuals do not engage in the unauthorized practice of law in our state. However, I am very concerned that the majority's resolution of this case will potentially upset decades of routine administrative hearings in our state, and could lead to seismic budgetary and staffing reallocations across various state agencies. These enormous consequences stem from a forty-five-minute Board of Review hearing that took place in 2018. During the hearing, a DHHR lay representative, Mr. Sorrent, engaged in brief questioning of two fact witnesses, which I believe has been mischaracterized by the majority as the unauthorized practice of law. The majority finds that Mr. Sorrent engaged in "impeachment and cross-examination - both traditional, adversarial litigation tactics." While Mr. Sorrent's questioning of the two witnesses focused on factual disparities between the testimony they offered during the hearing, and information the DHHR obtained during its 2005 investigation, I disagree that the mere questioning of the witnesses regarding such inconsistencies constituted the practice of law. At the conclusion of the hearing, Mr. Sorrent made a short statement summarizing the ***facts*** of the case. The majority again characterizes Mr. Sorrent's argument that C.P. had committed "maltreatment" as crossing the line into prohibited legal argument. As explained below, I do not believe Mr. Sorrent's actions constituted the unauthorized practice of law.

1

It is undisputed that "[t]he exclusive authority to define . . . the practice of law in West Virginia is vested in the Supreme Court of Appeals." Syl. Pt. 1, *State ex rel. Askin v. Dostert*, 170 W. Va. 562, 295 S.E.2d 271 (1982). As noted by the majority, this Court recently adopted the following general definition of the practice of law: "In general, one is deemed to be practicing law when they furnish to another advice or service under circumstances which imply the possession and use of legal knowledge and skill." W. Va. Def. Prac. L., (eff. January 1, 2020). Relevant to the instant matter, this definition goes on to provide:

> More specifically but without purporting to formulate a precise and completely comprehensive definition of the practice of law or to prescribe limits to the scope of that activity, one is deemed to be practicing law whenever . . . (3) one undertakes, with or without compensation and whether or not in connection with another activity, to represent the interest of another before any judicial tribunal or officer, or to represent the interest of another before any executive or administrative tribunal, agency or officer *otherwise than in the presentation of facts, figures or factual conclusions as distinguished from legal conclusions in respect to such facts and figures*.

*Id*. (emphasis added).

Mr. Sorrent's activities during the hearing consisted of providing a factual summary of the DHHR's investigation; engaging in a relatively brief examination of two witnesses that focused on factual disparities between the testimony they offered during the hearing, and information the DHHR obtained during its 2005 investigation; and providing a brief closing summary of the facts. Clearly, providing a brief summary of the DHHR's

2

investigation and a brief summary of the facts at the end of the hearing did not constitute the unauthorized practice of law.

The crux of this matter is whether Mr. Sorrent's "cross-examination" of the two witnesses can be considered practicing law. The majority of his questions explored 1) whether the child at issue had engaged in particular behaviors, 2) what led C.P. to contact the DHHR, and 3) the contact that these two witnesses previously had with the DHHR. These are factual issues. As the State's brief notes, Mr. Sorrent's "questions concerned facts, not legal interpretations or theories." Likewise, Mr. Sorrent did not cite any caselaw during the hearing. Nor did he argue that a particular statute, regulation, or rule compelled the ALJ to rule in the DHHR's favor. While it is certainly possible that a lay representative who undertakes an extensive cross-examination could cross the line and engage in the unauthorized practice of law, the facts in the instant matter simply do not support such a finding. This is especially so when considering Mr. Sorrent's conduct in the context of the proceeding at issue.

As noted by the majority, proceedings before the DHHR's Board of Review are governed by both the Administrative Procedures Act, West Virginia Code §§ 29A-5-1 to -5, and regulations promulgated by the DHHR. *See* W. Va. C.S.R. § 69-1-3.1. The State asserts that hearings before the Board of Review are relatively informal. Similar to magistrate court, a hearing officer in a Board of Review proceeding is not required to have a license to practice law. Rather, a hearing may be conducted by *either* a non-lawyer member of the Board of Review *or* a licensed attorney. *Id.* § 69-1-8.1.

3

Next, and crucial to the instant matter, the procedural rules of the Board of Review provide that "[e]very party, as well as the secretary and his or her staff, shall have the right of cross-examination of witnesses who testify, and shall have the right to submit rebuttal evidence." *Id.* § 69-1-4.7. The circuit court found that this rule exceeds the DHHR's statutory authority and "violates our state constitution by attempting to regulate the practice of law, which is solely reserved to the judicial branch[.]" I disagree. Permitting a lay representative of the DHHR to cross-examine a witness in a Board of Review hearing does not encroach on this Court's ability to regulate the practice of law. As the definition of law adopted by this Court explains, a person who appears before an administrative tribunal and confines their presentation to "facts, figures or factual conclusions as distinguished from legal conclusions" is not engaged in the practice of law. While this Court clearly has the authority to define the practice of law in this State, courts have limited power over administrative agency appeals. *See State ex rel. Cicchirillo v. Alsop*, 218 W. Va. 674, 629 S.E.2d 733 (2006).[1] Under W. Va. C.S.R. § 69-1-4.7 and this Court's definition of the practice of law, it is clear that Mr. Sorrent did not engage in the unauthorized practice of law by confining his cross-examination and closing summary to factual issues. Therefore, the circuit court's conclusion that W. Va. C.S.R. § 69-1-4.7 exceeds the DHHR's statutory authority was erroneous.

---

[1] In *Cicchirillo,* the Court held in syllabus point four that "[i]n a circuit court's final disposition of an administrative appeal pursuant to W.Va. Code § 29A-5-4 (1998) of the Administrative Procedures Act, the circuit court is not authorized to order a State administrative agency to cease the use of certain procedures and to direct the State agency to draft and implement new procedures which are subject to the circuit court's review."

Another factor that weighs in favor of finding that Mr. Sorrent did not engage in the unauthorized practice of law is that he did not hold himself out as a legal authority in this hearing, nor did his actions cause any harm to either C.P. or the public. In syllabus point six of *West Virginia State Bar v. Earley*, 144 W. Va. 504,109 S.E.2d 420 (1959), this Court held:

> The justification for excluding from the practice of law persons who are not admitted to the bar and for limiting and restricting such practice to licensed members of the legal profession is not the protection of the members of the bar from competition or the creation of a monopoly for the members of the legal profession, but is instead the protection of the public from being advised and represented in legal matters by unqualified and undisciplined persons over whom the judicial department of the government could exercise slight or no control.

Mr. Sorrent's summary of the facts and brief cross-examination did not implicate the concerns raised in syllabus point six of *Earley*.[2]

The DHHR also notes that this Court has approved the use of non-lawyer representation in informal proceedings, and compares the Board of Review hearing to a magistrate court proceeding. *See State ex rel. Frieson v. Isner*, 168 W. Va. 758, 285 S.E.2d

---

[2] The majority opinion rejects the position of the DHHR's and the Unlawful Practice of Law Committee of the West Virginia State Bar's argument that allowing the agency to appear by non-lawyer representatives does not represent a significant danger to the public. However, the DHHR points out that individuals appearing before the Board of Review are often "underprivileged pro se" claimants. Contrary to the position expressed by the majority, I believe that requiring attorney representation of the agency at such hearings, which are admittedly more informal in nature, may well place the pro se claimants at a distinct disadvantage. If the majority is concerned with non-lawyer representatives "cross-examining" pro se claimants, is not this concern heightened when such pro se individuals are confronted by an attorney trained in such cross-examination techniques.

641 (1981). The Court in *Frieson* noted that magistrate court procedures were "streamlined and simplified" and designed to "effect[] a speedy and efficient resolution of small claims." *Id*. at 777-78, 285 S.E.2d at 654-55. Further, the Court stated that magistrates were "not required to have legal training or to be licensed to practice law." *Id.* at 777, 285 S.E.2d at 654. Like magistrate courts, proceedings before the Board of Review are designed to bring about a speedy and efficient resolution of a particular claim. The DHHR states that it appears by lay representation in about 2,000 administrative proceedings per year, and that it has done so for three decades. The volume of these proceedings underscore the need to resolve them in a speedy and efficient manner. Additionally, neither magistrates nor Board of Review hearing officers are required to be licensed to practice law.

Courts outside of our jurisdiction have concluded that lay representatives may appear in an administrative proceeding without engaging in the unauthorized practice of law. The Ohio Supreme Court considered whether a non-attorney appearing before an unemployment compensation board on behalf of an employer constituted the unauthorized practice of law in *Henize v. Giles*, 490 N.E.2d 585 (Ohio 1986). Similar to the present case, the lay representative in *Henize* questioned witnesses, and made a closing statement during the administrative hearing. The court noted that an agency rule allowed non-attorney representation during the hearing, and ruled that the non-attorney did not engage in the unauthorized practice of law. 490 N.E.2d at 587-88. The court's ruling was guided largely by its finding that the proceeding was informal. *Id.*

6

Another court found that a non-attorney providing factual information during the course of an administrative matter did not constitute the unauthorized practice of law. In *Perto v. Board of Review*, 654 N.E.2d 232 (Ill. App. Ct. 1995), an employer's non-attorney representative sent the Illinois Department of Employment Security a request for a hearing, and provided it with a detailed recitation of the facts setting forth the employer's position. The court in *Perto* focused on the non-attorney's lack of legal knowledge, the lack of legal advice given, and noted that the information provided by the non-attorney was of a factual nature. The court explained its conclusion that the non-attorney did not engage in the unauthorized practice of law as follow: "[n]o legal advice was given. Rather, in response to investigatory probes by the Department, [the non-attorney] simply disagreed with the Department's determinations and presented a factual basis for the disagreement." 654 N.E.2d at 239.

When considering Mr. Sorrent's conduct in the context of the informal Board of Review hearing, I believe that he did not engage in the unauthorized practice of law. He did not provide legal advice to anyone, nor did he cite caselaw or statutory law in support of the DHHR's position. He simply provided a factual summary to the ALJ, and engaged in a relatively brief "cross-examination" of the two witnesses regarding certain factual disputes. Significantly, this conclusion is consistent with the position taken by the Unlawful Practice of Law Committee of the West Virginia State Bar in its amicus brief.

I agree with the Committee's assertion that whether a non-attorney has engaged in the unauthorized practice of law during an administrative hearing requires a

7

fact intensive inquiry on a case-by-case basis. However, I am deeply concerned that the majority has created significant uncertainty as to the status and role of non-lawyer representatives at administrative hearings by declining to issue "specific guidance" and instead finding that "the breadth of matters which are brought before the Board of Review and wide-ranging scope of potential conduct confounds any such attempt at a generalized rule." Therefore, I strongly urge the Committee to study this issue and, thereafter, to issue an advisory opinion addressing State agencies' use of lay representatives in administrative proceedings. The need to provide clear guidelines on this issue cannot be overstated. The DHHR appears by lay representation in approximately 2,000 hearings a year. Thus, the majority's ruling in this case could lead not only to confusion and uncertainty, but to significant budgetary and staffing reallocations as well. Therefore, I urge the Committee to commence studying this issue immediately.

Based on the foregoing, I respectfully dissent.[3] I am authorized to state that Chief Justice Jenkins joins me in this separate opinion.

---

[3] While I dissent to the majority's conclusion that Mr. Sorrent engaged in the unauthorized practice of law, I agree with the majority's finding that the other issues pertaining to the circuit court's evidentiary rulings are mooted by C.P.'s death. *See* Syl. Pt. 1, *Israel ex rel. Israel v. W. Va. Secondary Sch. Activities Comm'n*, 182 W. Va. 454, 388 S.E.2d 480 (1989).